UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

DOMMICITA ALLEN, et al.,

      Plaintiffs,

vs.                                                    Civ. No. 09-692 MV/ACT

BHP NAVAJO COAL COMPANY, et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion to Compel Arbitration and Stay Proceedings, filed May 21, 2010. (Doc. 47). By their motion, Defendants BHP Navajo Coal Company and San Juan Coal Company request that this Court compel the parties to arbitrate their dispute, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and to stay further proceedings in this Court pending resolution of the arbitral proceedings.

## BACKGROUND

The approximately 161 Plaintiffs in this action are coal miners who have performed or are performing work for Defendants BHP Navajo Coal Company and San Juan Company. Plaintiffs' Second Amended Fair Labor Standards Act Complaint contains the following general allegations:

> 4. Plaintiffs are coal miners performing work for Defendants, which conduct[ ] mining operations in Northern New Mexico. Both before and after the beginning of their work shifts, Plaintiffs perform work for which they are no[t] compensated.
>
> 5. During the time of their employment with Defendants, Plaintiffs are or were nonexempt employees paid by the hour and were entitled to receive one and one-half times their hourly rate for work beyond forty hours per week under state and

> federal law.  Plaintiffs and other employees were employed by Defendants and did perform work for Defendants in the last three years.
>
> 6.  Defendants willfully and repeatedly failed to pay Plaintiffs and other employees for all of the time they worked and also failed to pay wages at an overtime rate for hours worked in excess of forty in a workweek.
>
> 7.  At the beginning of the workday, Plaintiffs are directed to report to work at least 15 minutes prior to their shift starting time, during which time Plaintiffs perform work which includes taking instruction from members of management who provide safety instructions and other work directions.  Defendants[], by their actions, during this time period, begin the work day.  After several minutes of work instruction, employees are transported to their workplace.  Defendant, in violation of the FLSA, has failed to pay its employee[s] for this work time.
>
> 8.  At the end of the workday, Plaintiffs are transported back to [a] central location, at which time they perform additional work for the employer, which is also not compensated.  Defendants, in violation of the FLSA, have failed to pay their employees for this work time.

(Doc. 45 at ¶¶ 4-8).  Plaintiffs allege that the aforementioned conduct violates New Mexico wage and hour laws and the Fair Labor Standards Act ("FLSA").  (*Id.* at ¶¶ 9-16).

Defendants request that this Court compel arbitration on the basis that all of the named Plaintiffs are members of a collective-bargaining unit exclusively represented by the International Union of Operating Engineers, Local 953 ("Local 953") and that the terms and conditions of Plaintiffs' employment are governed by a collective-bargaining agreement ("CBA") (Doc. 22, Ex. 1 to Ex. A) between Local 953 and Defendants.

Section 4.9.7 of the CBA, which addresses travel time, provides:

> The Company shall provide transportation between the employee's designated place of work and the change room to which assigned.  The employee shall be at their designated place of work at the start of the shift and remain at their designated place of work until the end of the shift.  Such transportation will Leave the change room up to 15 minutes before the regular shift starting times.  Communication/instruction, verbal or written, will be allowed during this time for the safe efficiency of operation.  The employees will be picked up and returned to the change room within 15 minutes after the regular quitting time.  A **$4.00** per day travel allowance shall be paid to those employees involved.  Employees who

are not returned to the change room within 15 minutes of their regular quitting time will be paid one-half (½) hour at their overtime rate which will be deemed to include the **$4.00** allowance. Employees designated to drive transportation vehicles shall be paid $2.75 per day for driving to and from the change room. This shall be in addition to the **$4.00** travel allowance.

Additionally, Article 13 of the CBA sets forth a multi-step grievance procedure. First, Section 13.1 provides that "[a]n employee who files a grievance under the terms and conditions of this Agreement will attempt the resolution of their grievance by informal discussion with their immediate supervisor within five (5) working days of when the grievant knew about the problem." The supervisor, in turn, must provide a response within three working days. Second, if the grievance is not resolved pursuant to Section 13.1, Section 13.2 provides that it is to be "reduced to writing" and "presented to the department head or their authorized representative, or considered waived." Third, if the grievance is not settled within three working days following the written presentation prescribed by Section 13.2, Section 13.3 provides that it may be presented by the Business Agent of the local union, or his or her designated representative, to the General Superintendent or his or her authorized representative. The Company is then required to respond within five working days. Fourth, in the event a settlement is not reached pursuant to Section 13.3, Section 13.4 provides that the authorized International Representative of the Union has three calendar weeks in which to settle the grievance with the Mine Manager or his or her representative. Finally, if the aforementioned steps fail to resolve the grievance, Section 13.5 provides for binding arbitration. Specifically, the full text of Section 13.5 provides:

> In the event a settlement is not reached in Step 13.4 above, the dispute will be submitted forthwith to impartial and binding arbitration. If the parties are unable to reach mutual agreement in the matter of selecting of an arbitrator, the office of the Federal Mediation and Conciliation Service shall be requested to furnish a panel of seven (7) arbitrators, from which panel each party shall alternately strike one name, the last name remaining shall be designated as the arbitrator. The arbitrator's fees and expenses will be shared by the parties to this Agreement.

> The arbitrator shall be bound strictly by the terms and provisions of this Agreement, and shall have no power to modify, amend or add to the Agreement. Notice of intention to proceed to arbitration by either party shall be given in writing within fifteen (15) days of the Mine Manager's reply.

Additionally, pursuant to Section 13.6, the parties "recognize that prompt settlement of all disputes is essential to a harmonious relationship and agree that every effort will be made, in good faith, to resolve such disputes in the minimum possible time, consistent with the procedures set forth herein above."

## ANALYSIS

This Court will deny the motion to compel arbitration as it concludes that Plaintiffs' Second Amended Fair Labor Standards Act Complaint does not allege a violation of the CBA, but rather alleges violations of statutory right granted by the FLSA and state law, and that the arbitration clause contained in the CBA does not contain a clear and unmistakable waiver of the employees' rights to a judicial forum for these claims.

In *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981), the United States Supreme Court held that an employee may bring an FLSA claim in federal court even after having unsuccessfully pursued a wage claim based on the same underlying facts through the applicable collective-bargaining agreement's grievance procedures. In that case, truckdrivers brought suit against their employer on the basis that they were not being compensated for time spent performing required safety inspections of their trucks before commencing any trip. *Id*. at 730. Pursuant to a collective-bargaining agreement, one of the petitioners and another driver had previously filed a series of grievances against their employer alleging that the failure to pay for pre-trip inspections violated the collective bargaining agreement, which required the employer "to compensate its drivers 'for all time spent in [its] service.'" *Id.* at 730-31. These grievances

were ultimately presented to a joint grievance committee for a final and binding decision pursuant to the collective-bargaining agreement and were rejected without explanation. *Id.* at 731. Thereafter, suit was brought in federal court alleging *inter alia* that the time was compensable under the FLSA. *Id*. at 731-32. The employer argued that as the collective-bargaining agreement required that "any controversy" between the parties be resolved through the binding contractual grievance procedure and as the dispute had been resolved according to that procedure, the truckdrivers "should be barred from bringing the statutory component of their wage claim in federal court." *Id.* at 736. The Supreme Court, however, rejected this argument, emphasizing the difference between contractual rights derived from a collective-bargaining agreement and statutory rights derived from the FLSA. The Court explained:

> [T]he FLSA rights petitioners seek to assert in this action are independent of the collective-bargaining process. They devolve on petitioners as individual workers, not as members of a collective organization. They are not waivable. Because Congress intended to give individual employees the right to bring their minimum-wage claims under the FLSA in court, and because these congressionally granted FLSA rights are best protected in a judicial rather than in an arbitral forum, we hold that petitioners' claim is not barred by the prior submission of their grievances to the contractual dispute-resolution procedures.

*Id.* at 737–45 (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 49-50 (holding employee's Title VII lawsuit was not foreclosed by prior submission of discrimination claim to final arbitration and explaining that in submitting a grievance to arbitration, "an employee seeks to vindicate his contractual right under a collective-bargaining agreement" whereas by filing a lawsuit under Title VII, the "employee asserts independent statutory rights accorded by Congress" and that the "distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence")); *see also O'Brien v. Town of Agawam*, 350 F.3d 279, 285 (1st Cir. 2003) ("Rights conferred by Congress

are conceptually distinct from those created by private agreement, and there is no authority for the proposition that rights under the FLSA merge into contractual ones whenever the two overlap.").

In this case, Plaintiffs' Second Amended Fair Labor Standards Act Complaint does not allege a violation of the CBA; it alleges a violation of statutory rights. The question for this Court therefore is whether the CBA requires Plaintiffs to arbitrate these statutory claims. The Court finds that it does not require arbitration.

In *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 75-77 (1998), the Supreme Court recognized an obvious tension between cases such as *Barrentine* and *Gardner-Denver*, holding that submission of a grievance to arbitration or to a binding grievance procedure set forth in a collective-bargaining agreement did not preclude subsequent judicial resolution of statutory claims arising from the same facts, and a second line of Supreme Court cases holding that employees can be compelled to submit some federal statutory claims to arbitration pursuant to a valid contractual arbitration clause. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991). The Court, however, found it unnecessary to resolve the question of whether a union-negotiated collective-bargaining agreement could waive an employee's right to a judicial forum for his or her statutory claims, since it found no such waiver had occurred. *Wright*, 525 U.S. at 77. In *Wright*, the question presented to the Court was whether an employee was compelled to arbitrate his Americans with Disabilities Act claim pursuant to a general arbitration clause in a collective-bargaining agreement. In finding that the employee was not compelled to arbitrate the claim, the Court held that not only was the presumption of arbitrability inapplicable to petitioner's statutory claim, but that "any CBA requirement to arbitrate it must be particularly clear." *Id.* at 79-80. In other words, such waiver cannot be inferred from general contractual

6

provisions, but rather must be clear and unmistakable, as "the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA." *Id.* at 80. As the Court found that the general arbitration clause at issue, which required arbitration of "[m]atters under dispute," was not a clear and unmistakable waiver of the employee's right to a judicial forum, it held that the employee was not required to arbitrate his claim. *Id.* 80-82.

More recently, in *14 Penn Plaza LLC v. Pyett*, 129 S. Ct. 1456 (2009), the Supreme Court held that a provision in a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate Age Discrimination in Employment Act ("ADEA") claims is enforceable as a matter of federal law, thus answering the question (at least in the context of an ADEA claim) of whether a union-negotiated collective-bargaining agreement could waive an employee's right to a federal forum for certain statutory claims, while reiterating the clear and unmistakable standard set forth by *Wright*. The CBA in *14 Penn Plaza*, which met the clear and unmistakable standard, had a provision specifically addressing discrimination, which provided that "[t]here shall be no discrimination against any present or future employee by reason of . . . age . . ., including . . . claims made pursuant to . . . the Age Discrimination in Employment Act . . . . or any other similar laws, rules, or regulations," that "[a]ll such claims shall be subject to the grievance and arbitration procedures (Articles V and VI) as the sole and exclusive remedy for violations," and that "[a]rbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination." 129 S. Ct. at 1461, 1465-66.

In contrast to the provision at issue in *14 Penn Plaza,* the arbitration provision at issue in this case does not contain a clear and unmistakable waiver of Plaintiffs' right to a federal judicial forum. Section 13.1 of the CBA, which is the first step of the grievance process, simply refers to "a grievance under the terms and conditions of this Agreement." There is no reference to

statutory claims, much less to claims arising under the FLSA or similar statutes. Moreover, Section 13.5, which requires arbitration of grievances, explicitly provides: "The arbitrator shall be bound strictly by the terms and provisions of this Agreement, and shall have no power to modify, amend or add to the Agreement." In other words, if a provision of the CBA is in conflict with the FLSA, pursuant to Section 13.5 of the CBA, the arbitrator is without any power to rectify the statutory violation.[1] *See Barrentine*, 450 U.S. at 744 ("[E]ven though a particular arbitrator may be competent to interpret and apply statutory law, he may not have the contractual authority to do so. An arbitrator's power is both derived from, and limited by, the collective-bargaining agreement."). Given this limitation on the arbitrator's power and the absence of any language explicitly referencing arbitration of statutory claims, this Court finds that Plaintiffs are not compelled by the CBA to first submit their statutory claims (as opposed to contractual claims) to arbitration. While Defendants cite Section 13.6 of the CBA to support their assertion that all disputes are subject to arbitration, the Court finds that the Section 13.6, which provides in relevant part that the parties "recognize that prompt settlement of all disputes is essential to a harmonious relationship and agree that every effort will be made, in good faith, to resolve such disputes in the minimum possible time, consistent with the procedures set forth herein above," is likewise insufficient to establish a clear and unmistakable waiver of Plaintiffs' rights to bring

---

[1] Defendants downplay the significance of the language in the CBA providing that an arbitrator is "bound strictly by the terms and provisions of this Agreement, and shall have no power to modify, amend or add to the Agreement," as counsel for Defendants agreed (during discussions in which the parties attempted to reach a mutual agreement regarding arbitration) that certain provisions and remedies available under the FLSA would be available in arbitration. (Doc. 31, Ex. B). The problem with this argument, however, is that Defendants are asking the Court to ignore the CBA as written and instead interpret it in light of their apparent concessions. While the Court applauds the efforts of the parties to reach an agreement, the question for this Court is not whether Plaintiffs are compelled to arbitrate their claims pursuant to a proposed agreement by counsel, but whether they are compelled to do so by the CBA.


their FLSA claims directly in federal court. In short, this Court finds that the CBA does not contain the type of explicit waiver required by *Wright* and *14 Penn Plaza*. *See also O'Brien*, 350 F.3d at 285-86 (holding that police officers could file FLSA claims directly in federal court without exhausting grievance procedures set forth in collective-bargaining agreements where the CBAs did not contain a clear and unmistakable waiver of the officers' rights to a judicial forum for FLSA claims).

Defendants argue that a clear and unmistakable waiver is not required in this case as they are not seeking to prohibit Plaintiff from pursuing their claims in court, but only seeking to stay litigation pending arbitration, and there is thus no issue of waiver of a judicial forum. Defendants also argue that arbitration should be compelled in this case as Plaintiffs' FLSA claims implicate issues of contract interpretation. This Court finds that neither of these arguments is persuasive.

As to Defendants' first argument, this Court notes that Section 13.5 of the CBA provides for "binding arbitration," presumably on the basis that such procedure will result in more efficient resolution of the claims (as Defendants argue in their Motion to Compel Arbitration). It also limits an arbitrator's authority, binding him or her to "the terms and provisions" of the CBA. This Court will not re-write the CBA so as to require non-binding arbitration of statutory claims that the arbitrator may be without authority to rectify, as his or her power is limited to the terms and provisions of the CBA. Nor does this Court believe that requiring the parties to pursue non-binding arbitration before proceeding in Court necessarily promotes efficient resolution of the claims. Moreover, this Court is unpersuaded that Defendants' concession that they will not argue waiver or preclusion in any subsequent litigation is sufficient to distinguish this case from *Wright* and excuse Defendants from establishing a clear and unmistakable waiver.

To the contrary, in *Wright*, the petitioner was appealing a summary judgment order that dismissed his case without prejudice for failure to exhaust his remedies under the CBA. 525 U.S. at 75.  Thus, *Wright*, like this case, implicates the issue of whether one must first proceed under the CBA.  *See also O'Brien*, 350 F.3d at 285-86 (holding that plaintiffs were not required to submit their FLSA claims to arbitration, but could file their FLSA claims directly in federal court, where the CBA did not contain the clear and unmistakable waiver required by *Wright*).

This Court is likewise unpersuaded that arbitration should be compelled on the basis that Plaintiffs' FLSA claims raise issues of contract interpretation.  In support of their argument, Defendants cite Section 3(o) of the FLSA, 29 U.S.C. § 203(o), which provides that "[i]n determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end or each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee."  Defendants also cite the 29 U.S.C. § 254(a), which provides that subject to certain exceptions, an employer is not subject to liability under the FLSA for failure to pay minimum wages or overtime compensation for "(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activities or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."  And further provides that "[f]or purposes of this subsection, the use of an employer's vehicle for travel by an

employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee." Defendants contend that in light of these provision, Plaintiffs' FLSA claims will necessarily require interpretation of Section 4.9.7 of the CBA, quoted above, which addresses travel allowances. While this Court acknowledges the potential interplay between the CBA and the FLSA, it does not find that the interplay at issue requires this Court to compel arbitration. Notably, one of Plaintiffs' principal contentions in this case appears to be that, regardless of the agreement set forth in CBA, Defendants' act of providing instructions to employees begins the workday and precludes application of the cited provisions. This question would appear to turn on issues of statutory construction, rather than simply contract interpretation, and would appear to be unsuited to arbitration in light of Section 13.5 of the CBA, which limits the arbitrator's authority to "the terms and provisions of" the CBA. *See Barrentine,* 450 U.S. at 738-39 n.13 (recognizing that the threshold question of whether petitioners were engaged in preliminary activities versus principal activities was a question of statutory construction).[2]

---

[2] This Court acknowledges that in footnote 19 of *Barrentine*, the Supreme Court recognizes that the FLSA includes a number of references to collective-bargaining agreements and states: "Where a plaintiff's claim depends upon application of one of these exceptions, we assume without deciding that a court should defer to a prior arbitral decision construing the relevant provisions of the collective-bargaining agreement." 450 U.S. at 741-42 n.19. This language, which is dicta, does not persuade this Court that arbitration should be compelled. Among other things, the Court notes that there is a significant difference in deferring to a prior arbitral decision that construes contract provisions and compelling parties to pursue arbitration prior to proceeding in Court. Further, as noted above, it appears that Plaintiffs' claims do not turn primarily on interpretation of the CBA, but on issues of statutory construction.

Finally, relying on *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140 (10th Cir. 2007), Defendants argue that Plaintiffs are estopped from disputing the arbitrability of their claims based on alleged grievances brought by Local 953. Specifically, Defendants contend that Local 953 filed a grievance pursuant to a prior version of the CBA, which contained the same language as set forth in Section 4.9.7, alleging that a miner could not be found tardy for failure to report as required by that section (which grievance was withdrawn). (Doc. 22 at p.16; Doc. 22, Ex. A at ¶ 17). Defendants also contend that in 2009, Local 953 raised disputes about the interpretation of Section 4.9.7 in the current CBA and whether Defendants' interpretation of the provision violated the CBA and the FLSA. (Doc. 22 at pp. 16-17; Doc. 22, Ex. A at ¶ 18; Doc. 22, Ex. 2 to Ex. A). In *Lewis*, an employee filed suit for wrongful termination (based on alleged retaliation against him for seeking workers' compensation benefits) after he had already arbitrated a claim of retaliatory discharge pursuant to an arbitration agreement and lost on the merits of that claim. 500 F.3d at 1142. The Tenth Circuit held that the employee's claim was barred by claim preclusion and that he waived his argument that the arbitration agreement was invalid under contract law because he proceeded through arbitration without objecting to the agreement's enforceability. *Id.* at 1142, 1147-50. *Lewis* is inapposite for a number of reasons. First and

---

This Court further notes that Defendants' reliance on *Vadino v. A. Valey Eng'rs*, 903 F.2d 253 (3d Cir. 1990), is misplaced as in that case the employee's FLSA claim turned entirely on what was the appropriate rate of pay under the CBA. In *Vadino*, the employee alleged that the employer had breached the CBA by paying him less than the rate provided for in the CBA and further alleged that, as a result of the incorrect rate being applied, there was a corresponding underpayment of overtime wages in violation of the FLSA. *Id.* at 257, 264. The Court in *Vadino* held that a FLSA suit for overtime pay was not an appropriate vehicle for resolving a dispute as to what pay rate is appropriate pursuant to the terms of a CBA. *Id.* at 264-66. This case is easily distinguished from *Vadino*. Here the question of whether Defendants violated the FLSA, while potentially implicating the CBA, presents a separate question from whether Defendants breached the CBA. Plaintiffs' FLSA claim in this case is not a mere repackaging of a breach of contract claim.

foremost, there is no evidence that the statutory claims at issue have been arbitrated. This Court does not find that the mere filing of a grievance or attempts at informal resolution is sufficient to raise issues of claim preclusion or estop Plaintiffs from challenging the applicability of Article 13 to their statutory claims. Second, as noted above, claims alleging a breach of Section 4.9.7 and claims alleging a violation of the FLSA or other statutes are separate claims. Apart from a reference to the FLSA in 2009 correspondence, there is no evidence that these statutory claims have been pursued through the formal grievance process. Finally, as noted above, Defendants' position that Plaintiffs are estopped from challenging arbitration of their statutory FLSA claims based on such informal submissions to a grievance procedure would appear to be at odds with Supreme Court case law requiring a clear and unmistakable waiver of the right to a judicial forum.

Accordingly, for the reasons set forth above, this Court will deny Defendants' Motion to Compel Arbitration and Stay Proceedings.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion to Compel Arbitration and Stay Proceedings, filed May 21, 2010, is **DENIED**.

DATED this 30th day of March, 2011.

_____
**MARTHA VÁZQUEZ**
**UNITED STATES DISTRICT JUDGE**

13

<u>Attorneys for Plaintiffs</u>:
    Brandt P. Milstein, Esq.
    Shane C. Youtz, Esq.
    Gabrielle M. Valdez, Esq.
    Marianne L. Bowers, Esq.

<u>Attorney for Defendants</u>:
    Patrick R. Scully, Esq.
    Andrew W. Volin, Esq.
    George R. McFall, Esq.